Boyd *v.* Myers & DeHam.

JAMES S. BOYD, Jr., Trustee, etc., *v.* MYERS & DEHAM *et al.*

1. TRUSTEE. *Disbursements.* A trustee who *bona fide* incurs expense, or pays out money in behalf of a trust fund, to realize on same, is entitled to be re-imbursed out of the trust funds.

2. SAME. *Subrogation. Surety.* A surety.of the trustee in such case, who has had to pay out money for him, is entitled to be subrogated to the rights of the trustee to be re-imbursed out of the trust funds.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

T. R. CORNICK, Jr., and JAMES COMFORT for complainant.

C. E. LUCKY and WEBB & McCLUNG for defendants.

FREEMAN, J., delivered the opinion of the court.

Myers & DeHam were contractors on the Cincinnati Southern Railroad. Becoming largely indebted,. they transferred and assigned to R. M. McClung, as trustee, their contract, and all percentages retained by the railway company or trustees for the purpose of securing their creditors. McClung, as trustee, proceeded to finish the work, and to collect the balance due.

In July, 1876, it seems he had a settlement with the trustees of the road, and received the sum of

$15,948.98, which he deposited to his credit as trustee in the Commercial Bank of Knoxville, of which he was president. This bank suspended and became insolvent in the year 1877. McClung had drawn out much of the fund, but there remained between five and six thousand dollars to his credit.

He removed to Texas soon after this, and complainant was appointed trustee in his stead, and as such brought suit against the bank to recover the amount due the trust. He has received about six hundred dollars, and may receive more from this source.

He finds respondents, Porter and White, claiming a priority of right to the fund in his hands, and asserting they are entitled to be paid their debts in full, or as far as the funds in his hands will go. He, therefore, files his bill to have their claim adjudicated for his protection, and to administer the trust under the direction of the court.

The case of Porter is this: Smith & Co. had brought suit on a judgment had, we believe in West Virginia, against Myers, one of the assigning firm of Myers & DeHam, for about $380, in a court at Cincinnati, Myers being a non-resident an attachment in the nature of a garnishment was served on the trustees of the Cincinnati road, commanding them in the usual terms to hold the funds in their hands due to defendant, Myers, to answer the demand of Smith & Co. Under this proceeding, Porter being the general attorney of the trustees of the road, advised them to pay over nothing to McClung, to whom the fund due Myers & DeHam had been assigned. McClung find-

ing he could not get the fund paid over, applied to Porter for professional advice to aid him in getting the fund released. He was interested to this extent only, not being party to the suit of Smith & Co. v. Myers. Porter advised him that he could only get the fund released by paying the debt of Smith & Co., or giving a bond to pay it if judgment was rendered against him. Thereupon he gave the bond, procuring respondent, White, to make the bond, he not being competent to do so, being a non-resident, and having no real estate in the State of Ohio. When this bond was given the fund was released, and McClung got a settlement with the trustees of the road by which he received the fifteen thousand dollars and upwards afterwards deposited in the Commercial Bank.

He paid Porter fifty dollars, but Porter now claims an additional fee for services rendered in the defense of the case of Smith & Co. v. Myers, contesting the question as to whether the partnership fund was liable to be attached and garnisheed to pay an individual debt of a partner. This case he seems to have prosecuted up to the Supreme Court of the State, and ultimately to have had a decision favorable to his view of the law.

But it is obvious that after the bond was given, McClung, as trustee, had no interest whatever in that suit or that question, as is shown by the fact that though the question was won, White, who had given bond for him, was made liable for the Smith debt on his bond, and has had it to pay. The trust fund was only benefited, if at all, by the advice given on

12—VOL. 12.

which the fund was released on giving the bond. Whether the attachment and garnishment would hold good seems to have been unimportant to McClung after that.

We, therefore, think Porter's claim was properly disallowed by the chancellor.

The case of White presents more difficulty. It is not doubted that McClung, as trustee, was entitled to be reimbursed for all proper expenditures in the protection of, or rightfully accruing in, the administration of his trust, and that a liberal construction would be applied in favor of *bona fide* action of such a trustee.

It would be equally clear that if· the trustee would be entitled to have been reimbursed this sum, if he had paid it to White, as an expense incurred in furtherance of his trust, White would be entitled in a court of equity to be subrogated to his place if paid for the trustee, and for a proper and necessary charge against the trust fund, such as the trustee himself might have incurred. This saves circuity of ac· tion, and disposes of the right according to the real and ultimate equities of the case.

The case then is, whether McClung had the right or would be allowed this payment, if he had made it himself, in order to get the $15,000 released from the suit of Smith & Co. White must stand in his shoes. He has incurred the liability for him, and taken his place. He no doubt did it really relying on the personal responsibility of McClung, he being at the time a banker in Cincinnati, and the correspondent of the Commercial Bank at Knoxville, and as such hav-

ing well established relations of business confidence with McClung. This, however, does not change the equities on the facts as they now stand, for if Mc-Clung had remained solvent and continued trustee, and paid White, the same question would have arisen, that is, whether the payment was in furtherance of the object of the trust, and proper to be made under all the circumstances.

The trustee stood in this condition: He had a large fund assigned him, amounting to over $15,000, due from the trustees of the Cincinnati road. He found it "locked up," to use the language of the witness, to await the decision of a claim against one of the assignors for about $380. He could only get possession of the large sum by waiting the termination of the suit, paying the debt, or giving the bond. He decided to do the latter, and White gave the bond for him, and has been compelled to pay it, as Myers seems not to have made any defense to the Smith suit. If he had not intervened there would have been no defense, and the same result would have followed probably, a judgment would have been had, and the fund appropriated against his will. So that all things considered, the giving of the bond stands about on the same footing as if he had paid the money at once to Smith & Co. to obtain a release of the fund.

Upon consideration of these facts, we hold that White is entitled to stand in the shoes of McClung, and if McClung had paid the amount to White, he would have been entitled to reimbursement as a proper

charge on the fund, and White entitled to have the same advantage McClung would have enjoyed.

The decree of the chancellor and report of Referees will be modified as indicated in this opinion, costs of this court and court below be paid by Porter, so far as incurred in his branch of the case; costs as between White and complainant will be paid in this court and the court below out of the fund.